1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                  San Francisco Division

| | |
|---|---|
| 11  STEPHEN MONEY, | Case No.  15-cv-03213-LB |
| 12           Plaintiff, | |
| 13      v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| 14  JOHNSON & JOHNSON, et al., | |
| 15           Defendants. | Re: ECF No. 60 |
| 16 | |

17                      **INTRODUCTION**

18       This is a products liability case about defective contact lenses.[1] Stephen Money, the plaintiff

19  and contact-lens user, sued Johnson & Johnson, Johnson & Johnson Vision Care ("Vision Care"),

20  and Luxottica Retail North America when, after wearing his new Acuvue Oaysis lenses, he

21  suffered pain, blindness, bilateral corneal damage, and chemical conjunctivitis.[2] The defendants

22  now move for judgment on the pleadings under Rule 12(c) and argue that Mr. Money's state-law

23  claims are preempted by the Medical Device Amendments ("MDA") to the Food, Drug, and

24  Cosmetic Act and fail to state plausible claims for relief.[3] The court grants in part the defendants'

25  ――――――――――――

26  [1] *See generally* Second Amended Complaint ("SAC") – ECF No. 53. Record citations refer to
    material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page
    numbers at the top of documents.

27  [2] SAC ¶¶ 6–8, 10–18.

28  [3] *See generally* Motion for Judgment on the Pleadings ("Motion") – ECF No. 60.

ORDER (No. 15-cv-03213-LB)

motion because Mr. Money fails to allege sufficient facts to state a plausible claim for battery and he concedes that his implied warranty claims against Johnson & Johnson and Vision Care fail. The MDA does not preempt the remainder of Mr. Money's claims, and he alleges sufficient factual allegations to state plausible claims for relief.

## STATEMENT

The Acuvue Oasys contact lenses are a Class III medical device under the Medical Device Amendments ("MDA") to the Food, Drug, and Cosmetic Act.[4] As such, prior to making the lenses, Johnson & Johnson and Vision Care submitted a premarketing approval ("PMA") application to the Food and Drug Administration ("FDA"), which the FDA approved on December 20, 2005.[5] "[T]he PMA has [since] been modified 53 times," most recently on December 10, 2015.[6]

The PMA contains information bearing on the contact lenses and their production.[7] For example, Mr. Money alleges that the PMA sets "the maximum permissible concentrations for each" chemical composing the lens coating and cleaning solution.[8] Mr. Money also alleges that the PMA requires the defendants to follow manufacturing procedures to ensure the purity and stability of the lens material and solution.[9] He alleges they must: 1) detect, review, and dispose of impure or unstable lenses or solution; 2) remove and dispose of non-conforming lenses and solution; and

---

[4] SAC ¶ 19.

[5] SAC ¶¶ 20–21; Larimer Decl., ¶¶ 2–3, Ex. A, Ex. C. The court takes judicial notice of the FDA's Approval Order, the FDA's webpage showing its Approval Order Statement, and the FDA's webpage showing its Premarket Approval Database. *White v. Social Sec. Admin.*, 111 F. Supp. 3d 1041, 1047–48 (N.D. Cal. 2015) (taking judicial notice of documents on government website); *Gustavson v. Mars, Inc.*, No. 13-cv-04537-LHK, 2014 WL 2604774, at *3 n.1 (N.D. Cal. June 10, 2014) (taking judicial notice of FDA letters and press releases on FDA website).

[6] SAC ¶ 22.

[7] *Id.* ¶¶ 30–31.

[8] *Id.* ¶¶ 29–30.

[9] *Id.* ¶ 31.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  3) prevent non-conforming lenses and solution from reaching the public.[10] It is the deviation from

2  — or violation of — these requirements that Mr. Money alleges caused his injuries.[11]

3      In May 2013, Mr. Money "purchased a package of Acuvue Oasys contact lenses

4  manufactured, stored, distributed and sold by [the] Defendants."[12] One day, after putting on new

5  lenses at 6:30 a.m., he experienced blurred vision and pain in his eyes during the day and into the

6  evening.[13] When he removed the lenses, he "experienced extreme pain in both eyes . . . [and]

7  became blind."[14] He went to the emergency room but, although he received treatment and was

8  released that night, he continued to experience blindness. [15]

9      Mr. Money returned to the hospital three more times.[16] Mr. Money "was still blind and in

10 pain" the next morning, so he returned to the hospital, received additional treatment, and was

11 diagnosed with blindness, bilateral corneal damage, and chemical conjunctivitis.[17] He again

12 returned the following day, and once more two days after that.[18] By this time his "vision improved

13 to the point that he could see . . . [but] he was still very sensitive to the light."[19]

14     Mr. Money sues the defendants because of his experience with the lenses. He filed his Second

15 Amended Complaint ("SAC") after the court dismissed the First Amended Complaint.[20] The SAC

16 raises four claims: 1) negligence — manufacturing defect; 2) strict liability — manufacturing

17 defect; 3) breach of implies warranties of merchantability and fitness for a particular purposes; and

18 4) battery.[21] The defendants answered and now move for judgment on the pleadings under Federal

19 _____

20 [10] *Id.*

21 [11] *Id.* ¶¶ 31–32; 39–40.

22 [12] *Id.* ¶ 10.

23 [13] *Id.* ¶ 11–12.

24 [14] *Id.* ¶ 13.

25 [15] *Id.* ¶ 13–14.

26 [16]*Id.* ¶¶ 15, 17.

27 [17] *Id.* ¶¶ 15–16.

28 [18] *Id.* ¶ 17.

[19] *Id.* ¶ 17.

[20] Order – ECF No. 52.

[21] SAC ¶¶ 23–65.

Rule of Civil Procedure 12(c).[22] The defendants argue that Mr. Money's claims are both preempted and fail for lack of plausibility.[23]

## GOVERNING LAW

After the pleadings are closed "but early enough not to delay trial," a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rules 12(c) analog" because the motions are "functionally identical." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). A Rule 12(c) motion may thus be predicated on either 1) the lack of a cognizable legal theory or 2) insufficient facts to support a cognizable legal claim. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to dismiss under Rule 12(c), the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "A judgment on the pleadings is proper if, taking all of [the plaintiff]'s allegations in its pleadings as true, [the defendant] is entitled to judgment as a matter of law." *Compton Unified School Dist. v. Addison*, 598 F.3d 1181, 1185 (9th Cir. 2010).

## ANALYSIS

### 1. Preemption

The defendants argue that the MDA expressly and impliedly preempts Mr. Money's state-law claims.[24] To the extent that they are based on violations of the PMA, though, Mr. Money's manufacturing defect and warranty claims "squeeze through" the gap in the MDA's preemption provisions. *See Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1120 (9th Cir. 2013).

---

[22] Motion for Judgment on the Pleadings – ECF No. 60.

[23] *See generally id.*

[24] Motion at 13–23.

The MDA expressly and impliedly preempts certain claims sounding in state-law tort. *See Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008) (express preemption); *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001) (implied preemption).

First, the MDA expressly preempts state safety and effectiveness requirements that are different from, or add to, federal requirements:

> Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement —
>
> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
>
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a). The subsection (b) exception, which allows the FDA to exempt state laws from preemption, is inapplicable here. *See De La Paz v. Bayer Healthcare LLC*, No. C 15-03995 WHA, 2016 WL 392972, at *4 (N.D. Cal. Feb. 2, 2016).

Two conditions must be met for express preemption to apply: 1) the federal government must have established requirements applicable to the device at issue and 2) the state law must impose safety and effectiveness requirements "different from, or in addition to," the federal requirements. *Riegel*, 522 U.S. at 321–22. The first element — the existence of applicable federal requirements — is satisfied where, as here, a device was approved through the PMA process. *Id.* at 322–23 (holding that the PMA process "imposes 'requirements' under the MDA"). The second element — different or additional state-law safety and effectiveness requirements — may be satisfied by state common law duties. *Id.* at 323–24.

Section 360k(a) will not, however, preempt state duties that "'parallel,' rather than add to, federal requirements." *Id.* at 330. To properly plead a parallel claim, "a plaintiff must allege facts (1) showing an alleged violation of FDA regulations or requirements related to [the device], and (2) establishing a causal nexus between the alleged injury and the violation." *Edison v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 880 (N.D. Cal. 2013) (quoting *Erickson v. Boston Scientific Corp.*, 846 F. Supp. 2d 1085, 1092 (C.D. Cal. 2011)).

Second, the MDA impliedly preempts claims that exist "solely by virtue" of federal requirements. *Buckman*, 531 U.S. at 352–53. "The FDCA provides that enforcement of its requirements (including the MDA) 'shall be by and in the name of the United States[,]'" and so, "the Federal Government rather than private litigants . . . [is] authorized to file suit for noncompliance with the medical device provisions." *De La Paz*, 2016 WL 392972 at *4 (quoting 21 U.S.C. § 337(a); *Buckman*, 531 U.S. 349 n.4). Thus, only "claims that rely on 'traditional state tort law' may proceed (to the extent they can overcome express preemption)." *De La Paz*, 2016 WL 392972 at *4.

Between the MDA's express and implied preemption, there is a "narrow gap through which a state-law claim must fit to escape preemption by the [MDA]." *Perez*, 711 F.3d at 1120. To fit, "[t]he plaintiff must be suing for conduct that *violates* the [MDA] (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the [MDA] (such a claim would be impliedly preempted under *Buckman*)." *Id.* (quoting *In re Medtronic, Inc., Sprint Fidelis Leads Products Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010)). Mr. Money's manufacturing defect and implied warranty claims "squeeze through" this gap to the extent based on the PMA.

The court considers separately Mr. Money's state-law claims to determine if they are preempted. *See Funke v. Sorin Group USA, Inc.*, No. SACV 15-01182-CJC(ASx), 2015 WL 7747011, at *3 (C.D. Cal. Nov. 24, 2015) ("The second prong of *Riegel* . . . must be addressed separately for each of [the plaintiff's] claims.") Because the parties did not discuss (or cite to) authority addressing specifically the preemption of battery claims, the court does not now determine if Mr. Money's battery claim is preempted.

### 1.1 Manufacturing defect claims — negligence and strict liability

Mr. Money brings claims for manufacturing defect in both negligence and strict liability.[25] "A manufacturing defect occurs when the product 'differs from the manufacturer's intended result or

---

[25] SAC ¶¶ 23–36, 37–47.

1    from other ostensibly identical units from the same product line.'" *Carson v. Depuy Spine, Inc.*

2    365 Fed. Appx. 812, 814 (9th Cir. 2010) (quoting *Barker v. Lull Engineering Co., Inc.*, 20 Cal. 3d

3    413, 429 (1978)). "In other words, such a claim posits 'that a suitable design is in place, but that

4    the manufacturing process has in some way deviated from that design.'" *Tucker v. Wright Medical*

5    *Technology, Inc.*, No. 11-cv-03086-YGR, 2013 WL 1149717, at *10 (N.D. Cal. March 19, 2013)

6    (quoting *In re Coordinated Latex Glove Litig.*, 99 Cal. App. 4th 594, 613 (2002)). For a

7    manufacturing defect claim to survive MDA preemption, courts have "required specific

8    allegations 'that the manufacturing of the device both fell short of the FDA's requirements for

9    manufacturing and — based on the same deficiency — was defectively manufactured under

10   California law.'" *De La Paz*, 2016 WL 392972 at *5 (quoting *Funke*, 2015 WL 7747011 at *6).

11       Here, the MDA does not preempt Mr. Money's manufacturing defect claims. First, § 360k(a)

12   does not expressly preempt his claims because he alleges specific violations of the PMA, ties them

13   to his manufacturing defect claim, and establishes a causal nexus between the federal violation and

14   his injuries. He alleges that the PMA establishes the maximum chemical concentrations for the

15   lens coating and cleaning solution.[26] He further alleges that the PMA establishes certain

16   procedures for manufacturing, reviewing, and removing lenses and lens solution that is impure or

17   unstable.[27] He then asserts that the defendants fell "below the[se] standards of purity and other

18   manufacturing requirements[,]" causing the lenses to be defective (*i.e.*, impure, unstable) and thus

19   also causing his injuries.[28] Unlike the cases cited by the defendants, these allegations do not

20   amount to vague, overly-broad assertions that the defendants violated the FDCA. *See, e.g.*,

21   *Erickson v. Boston Scientific Corp.*, 846 F. Supp. 2d 1085, 1092-93 (C.D. Cal. 2011) ("Plaintiff

22   alleges only that the pacemakers 'were designed and/or manufactured in a manner violative of the

23   [FDCA]' and that '[t]he facilities or controls used by Defendants . . . were not in conformity with

24   applicable FDCA regulations.'"); *Simmons v. Boston Scientific Corp.*, No. CV 12-7962 PA

25

26   _____

27   [26] SAC ¶¶ 29–30.

     [27] SAC ¶ 31.

28   [28] SAC ¶ 32.

United States District Court
Northern District of California

1    (FFMx), 2013 WL 1207421 (C.D. Cal. March 25, 2013) ("[The plaintiff] fails even to state what

2    PMA specifications were imposed on the Subject Device, let alone which specifications the

3    Subject Device failed to satisfy.") Mr. Money instead ties his claims to specific Acuvue Oasys

4    PMA requirements. On this record, this is sufficiently specific to proceed to discovery. As pled, he

5    states a parallel claim that avoids express preemption.

6         Second, and for similar reasons, the MDA does not impliedly preempt his claims. The

7    defendants argue that Mr. Money's "claims impermissibly attempt to enforce federal law" because

8    they rely "solely on federal-law violations."[29] Just opposite, though: Mr. Money brings his claims

9    under California law.[30] He asserts violations of federal requirements (the PMA) because he has to;

10   otherwise, his claims would be expressly preempted. The SAC makes clear that he is not enforcing

11   the violations of those federal requirements, but using them as a basis for his state-law claims (as

12   he must).[31] His claims for manufacturing defect are not impliedly preempted.

13

14        **1.2 Implied warranties — merchantability and fitness for a particular purpose**

15        Mr. Money also brings claims for breach of the implied warranties of merchantability and

16   fitness for a particular purpose, both under California law.[32] "The implied warranty of

17   merchantability warrants that goods are fit for the ordinary purposes for which such goods are

18   used." *Marcus v. Apple Inc*., No. C 14-03824 WHA, 2015 WL 151489, at *9 (N.D. Cal. Jan. 8,

19   2015) (citing Cal. Com. Code § 2314(c)). "An implied warranty of fitness for a particular purpose

20   arises when a seller at the time of contracting has reason to know any particular purpose for which

21   the goods are required and that the buyer is relying on the seller's skill or judgment to select or

22   furnish suitable goods, which are fit for such purpose." *Keith v. Buchanan*¸ 173 Cal. App. 3d 13,

23   25 (1985) (internal quotations omitted).

24

25   _____

26   [29] Motion at 17.

     [30] SAC ¶¶ 36, 47, 58, 65.

27   [31] *See, e.g.*, Opposition at 2–3.

28   [32] SAC ¶¶ 48–58.

*United States District Court*
*Northern District of California*

1    For the same reasons stated above, Mr. Money's claims for breach of California implied

2    warranties survive preemption. He identifies specific federal requirements (the PMA's purity,

3    stability, and manufacturing procedures), alleges the violation of those requirements, and thereby

4    establishes a connection between the federal violation and his state-law claims (*i.e.* the impurity or

5    instability rendered the lenses unfit for the ordinary purpose and unfit for the particular purpose of

6    placing them on his eyes). These claims therefore parallel, rather than add to, the federal

7    requirements, and are premised on state-law warranties, avoiding preemption.

8                                    *        *        *

9    In sum, excluding from consideration his battery claim, Mr. Money asserts claims for conduct

10   *violating* federal requirements (avoiding express preemption), but not *because* the conduct

11   violated those requirements (avoiding implied preemption). Even though he does not currently cite

12   to precise provisions of the PMA — which the defendants may prefer[33] — his allegations tied to

13   the PMA are sufficiently specific to proceed to discovery. To hold otherwise would impose on Mr.

14   Money an impossible pleading standard because he has not yet received the PMA (a confidential

15   document). *See Warren v. Howmedica Osteonics Corp.*, No. 4:10 CV 1346 DDN, 2011 WL

16   1226975, at *5 (E.D. Mo. March 29, 2011) ("[P]laintiffs are permitted to proceed to discovery to

17   determine which particular PMA specifications defendants may have violated in manufacturing

18   [the device].") The court does note, however, that any intimations at claims arising under general

19   regulations referred to in the SAC are untenable because they are too broad. *See Simmons*, 2013

20   WL 1207421 at *4 ("[A] plaintiff must allege that the defendant violated a particular federal

21   specification referring to the device at issue . . . or identify specific PMA requirements that have

22   been violated.") (internal quotations omitted); *Thomas v. Alcon Laboratories*, 116 F. Supp. 3d

23   1361, 1369 (N.D. Ga. 2013) ("[T]o allow a violation of such a flexible standard to result in

24   liability would, in itself, be imposing a standard 'different from, or in addition to' those imposed

25   by the MDA."). The MDA accordingly does not preempt his claims for manufacturing defect or

26

27   _____

28   [33] Motion at 18–19.

1    breach of implied warranties to the extent arising under the PMA. (The court does not rule on the

2    battery claim.)

3

4    **2.   Plausibility**

5         The defendants also move for judgment on the pleadings for Mr. Money's failure to state

6    plausible claims for relief. The court considers the sufficiency of his claims in turn.

7

8    **2.1 Mr. Money's claims for manufacturing defects are sufficiently pled**

9         "In order to prove facts sufficient to support a finding of negligence, a plaintiff must show that

10   the defendant had a duty to use due care, that he breached that duty, and that the breach was the

11   proximate or legal cause of the resulting injury." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622,

12   629 (2013) (alterations omitted). "In California, negligence *per se* is not a separate cause of action

13   but is the application of an evidentiary presumption[.]" *Carson*, 365 Fed. Appx. at 815. There are

14   four elements: "(1) the defendant violated a statute or regulation; (2) the violation caused the

15   plaintiff's injury; (3) the injury resulted from the kind of occurrence the statute or regulation was

16   designed to prevent; and (4) the plaintiff was a member of the class of persons the statute or

17   regulation was intended to protect." *Id.* (citing *Alejo v. City of Alhambra*, 75 Cal. App. 4th 1180,

18   1184-85). As for manufacturing defects, the requirements for stating a negligence and strict

19   liability claim are the same. *See Fender v. Medtronic, Inc.,* 887 F. Supp. 1326, 1333 (E.D. Cal.

20   1995). In both cases, the plaintiff must show that: "(1) he has been injured by the product; (2) the

21   injury occurred because the product was defective; and (3) the defect existed when the product left

22   the hands of the defendant." *Tucker*, 2013 WL 1149717 at *10 (citing *Fender,* 887 F. Supp. at

23   1333).

24        Here, Mr. Money's allegations state a plausible claim for negligent and strict liability

25   manufacturing defect. His allegations support a claim for negligence *per se*: he alleges that the

26   defendants violated the PMA's purity, stability, and manufacturing procedural requirements which

27   caused his pain, blindness, and other eye injuries. These allegations plausibly support a conclusion

28   that the PMA requirements were meant to protect against injuries to lens-wearers' eyes, including

United States District Court
Northern District of California

Mr. Money. His allegations also plausibly show that his eye injuries were caused by the lenses: after putting the lenses in at 6:30 a.m., he experienced pain during the day, followed by extreme pain and blindness when he took them out.[34] He alleges that the injury occurred because the lenses were defective: they contained impurities.[35] And finally, the defect existed when it left the hands of the defendants: he asserts that the contacts were new.[36] These allegations plausibly support a claim for negligent and strict liability manufacturing defect. These claims survive.

### 2.2 Mr. Money's implied warranty claims are sufficiently pled against Luxottica

The defendants challenge Mr. Money's implied warranty claims on two bases: 1) there is no privity between Mr. Money and defendants Johnson & Johnson and Vision Care and 2) he fails to state a claim against defendant Luxottica.[37] Mr. Money concedes the former and thus the court dismisses his claim against Johnson & Johnson and Vision Care.[38] *See Currier v. Stryker Corp.*, No. 2:11-cv-1203 JAM-EFB, 2011 WL 4898501, at *4 (E.D. Cal. Oct. 13, 2011). The court considers the sufficiency of the claims against Luxottica, the contact-lens retailer.[39]

A "breach of the implied warranty of merchantability means the product did not possess even the most basic degree of fitness for ordinary use." *Moce. v. Alfa Leisure, Inc.,* 114 Cal.App. 4th 402, 406 (2003). "A product which performs its ordinary function adequately does not breach the implied warranty of merchantability merely because it does not function as well as the buyer would like, or even as well as it could." *General Motors Corpo. v. Brewer,* 966 S.W.2d 56, 57 (1998). "In order to state a claim for breach of implied warranty of fitness under . . . the California Commercial Code, a plaintiff must allege that (1) the seller has reason to know of a particular

---

[34] SAC ¶¶ 11–13.

[35] *Id.* ¶ 32.

[36] *Id.* ¶ 11.

[37] Motion at 25–26.

[38] Opposition at 4; SAC ¶ 53.

[39] SAC ¶ 10.

United States District Court
Northern District of California

1  purpose for which the goods are required, and (2) that the buyer relies on the seller′s skill or

2  judgment to select or furnish suitable goods." *Marcus*, 2015 WL 151489 at *8.

3      Here, Mr. Money alleges that he purchased the contact lenses from a "store owned and

4  operated by Defendant Luxottica."[40] He also alleges that the lenses were defectively

5  manufactured, causing lens or lens solution impurity or instability and thus his injuries.[41] In the

6  context of a simple claim for breach of the implied warranties of merchantability and fitness for a

7  particular purpose, this is sufficient. *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 591

8  n.10 (2007) (stating that fewer allegations are necessary to state a plausible simple negligence

9  claim versus a complex antitrust claim); *McCauley v. City of Chicago*, 671 F.3d 611, 616-17 (7th

10  Cir. 2011) ("[R]equired level of factual specificity rises with the complexity of the claim.") The

11  SAC plausibly alleges that Luxottica sold the lenses and that the lenses were not merchantable or

12  fit for the particular purpose (in both cases, to wear the contacts). The claim therefore survives.

14  **2.3 Mr. Money fails to state a plausible claim for battery**

15      Mr. Money's final claim is for battery.[42] "A battery is any intentional, unlawful and harmful

16  contact by one person with the person of another." *Ashcraft v. King*, 228 Cal. App. 3d 604, 611

17  (1991) (internal citations omitted). "To prevail on a claim for battery, a plaintiff must show: (1)

18  that the defendant made contact with the plaintiff with the intent to harm or offend; (2) that the

19  plaintiff did not consent to the contact; and (3) that the plaintiff was harmed or offended by the

20  contact." *Rogers v. Molina*, No. 15-cv-02385-JCS, 2015 WL 3750286, at *3 (N.D. Cal. June 15,

21  2015).

22      Here, Mr. Money fails to plausibly state a claim for battery. First, he has not plausibly alleged

23  that the defendants made contact with his person within the meaning of the claim. *See Huntman v.*

24  *Danek Medical, Inc.*, No. 97-2155-IEG RBB, 1998 WL 663362, at *3 n.8 (S.D. Cal. July 24,

---

[40] *Id.* ¶¶ 10, 49.

[41] *Id.* ¶¶ 28–32.

[42] *Id.* ¶¶ 59–65.

United States District Court
Northern District of California

1998) (dismissing with prejudice the plaintiff's claim that the manufacturer-defendant's illegal marketing of bone screws, and the plaintiff's subsequent screw implantation, amounted to battery because the plaintiff could not show that the defendant touched him). Second, he has not plausibly shown that whatever contact there was (*i.e.* his placing of the contacts on his eyes) was "unlawful" — "[a] contact is 'unlawful' [only] if it is unconsented to." *Ashcraft*, 228 Cal. App. 3d at 611. He instead pleads that he purchased and placed the contacts in his eyes, showing his consent to their use.[43] Third, to the extent that there was unconsented harmful contact, Mr. Money has not plausibly pled that the defendants made the contact with intent to harm. Mr. Money therefore fails to state a plausible claim for battery against the defendants and the court dismisses the claim.

## CONCLUSION

The court dismisses Mr. Money's claim for battery and his implied warranty claims against Johnson & Johnson and Vision Care. The implied warranty claims are dismissed without leave to amend. The battery claim is dismissed with leave to amend within 21 days of this order. That said, given the battery claim's deficiencies, and given that the other claims fairly encompass the alleged harm, the court cannot see how amendment would cure the defects and thinks that the SAC is sufficient. His other claims survive.

**IT IS SO ORDERED.**

Dated: May 31, 2016

_____
LAUREL BEELER
United States Magistrate Judge

---

[43] *Id.* ¶¶ 10–11.